**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTA E. JIMENEZ,

        Plaintiff,

v.

NANCY A. MARNELL and JAMIL BRASH,

        Defendants.

Civ. No. 06-2676 (DRD)

**O P I N I O N**

*Appearances by:*

THE BOSTANY LAW FIRM
40 Wall Street, 61st floor
New York, NY  10005
by:  Daniel A. Levy, Esq.

    *Attorney for Plaintiff*

McDERMOTT & McGEE
75 Main Street
P.O. Box 192
Millburn, NJ  07041
by:  John L. McDermott, Jr., Esq.

    *Attorney for Defendant Nancy Marnell*

STEIN McGUIRE PANTAGES & GIGL
354 Eisenhower Parkway
Livingston, NJ  07039
by:  Bridget Hagerty Farley, Esq.

    *Attorney for Defendant Jamil Brash*

**DEBEVOISE, Senior District Judge**

Plaintiff, Marta Jimenez, brings this action to recover damages for personal injuries sustained in an automobile accident with Defendant, Nancy Marnell, in Bayonne, New Jersey on April 30, 2006. Defendant, Jamil Brash, who was operating the car in which Jimenez was a passenger, has moved for summary judgment on the grounds that Jimenez failed to timely provide a certification of significant bodily injury from a treating physician as required by N.J. Stat. Ann. § 39:6A-8(a). Marnell has joined Brash's motion. Because the failure to timely file a physician's certification does not mandate the dismissal of a plaintiff's complaint, the motions for summary judgment will be denied.

## I.  BACKGROUND

At the time of the accident, Marta Jimenez was a resident of the State of New York. On April 30, 2006, Jimenez was traveling as a passenger in her 2005 Hyundai Elantra, bearing the license plate number DEJ4394. The vehicle was being operated by Jamil Brash when it collided with a 1999 Honda Accord, which was being operated by Nancy Marnell, near the intersection of W23rd Street and Delmonte Drive in Bayonne, New Jersey. Marnell maintains that she was attempting to make a signaled left-hand turn from W23rd Street into a driveway on the opposite side of the street when her driver's side door was struck by the front of Jimenez's vehicle.

At the time of the accident, Jimenez's 2005 Hyundai Elantra was insured under an automotive liability policy issued by GEICO. GEICO is authorized to underwrite automobile liability insurance in the State of New Jersey.

Jimenez, who was wearing her seatbelt, claims to have been seriously injured by the

accident. She was taken immediately to the Bayonne Medical Center where she complained of headache, neck pain, and lower back pain. Jimenez was examined by Dr. Christopher Tolerico, M.D. Dr. Tolerico diagnosed Jimenez with sustained neck and back strain. Jimenez was then prescribed Motrin, an over-the-counter drug used to treat pain or inflamation, and discharged.

Following her discharge from the Bayonne Medical Center, Jimenez came under the care of Dr. Xiao-Ke Gao, M.D. and Dr. Ronald Krinick, M.D. In a narrative report dated June 15, 2006, Dr. Krinick describes Jimenez's complaints of bilateral shoulder pain, which allegedly began following the April 30, 2006, accident. The report states that Jimenez was referred to his office by Dr. Gao, who had treated Jimenez's pain with medication, acupuncture, and heat. Jimenez had also received some physical therapy, which had resulted in a partial improvement in her range of motion.

An MRI of Jimenez's spine was taken on June 17, 2006, by the Lenox Hill Radiology and Medical Imaging Associates. The results were interpreted by Dr. Jacob Lichy, M.D., who reported finding herniation of the discs in Jimenez's spine. A second MRI, focusing on Jimenez's left knee was taken on July 8, 2006. Following the MRIs, Jimenez underwent surgery to repair her left shoulder on July 12, 2006. The surgery was performed by Dr. Krinick and consisted of debridement[1] of a rotator cuff tear; excision of a labrum tear; a bursectomy;[2] and the

---

[1] Debridement is the surgical excision of dead, devitalized, or contaminated tissue or removal of foreign matter from a wound for the purpose of speeding healing.

[2] A bursectomy is the surgical removal of a bursa—a fluid-filled sac, or sac-like cavity, situated in places in tissue where friction occurs.

release of the coracoacromial ligament.[3]  The following spring, on May 4, 2007, Jimenez underwent a second surgery—this time to repair her right knee.  The surgery was again performed by Dr. Krinick and consisted of a partial medial meniscectomy[4] and a chondroplasty[5] of the medial femoral condyle.

Jimenez has received multiple Follow Up Neurological and Pain Management Evaluations from Dr. Gao since the accident.  The last report, dated November 28, 2006, states that Jimenez was suffering from back, knee, and shoulder pain as well as anxiety.

Previously, in August of 2006, Jimenez filed a complaint in this court that named Marnell as the only defendant.  In addition to filling an answer, Marnell filed a third-party complaint against Brash in November of 2006.  The third-party complaint asserts that if Marnell is found to have been negligent, then her negligence is merely secondary to the primary negligence of Brash.  The third-party complaint further seeks judgment against and indemnification from Brash.

On July 23, 2007, Jimenez filed an amended verified complaint which named Brash as a defendant in the action.  Discovery concluded several months later on November 15, 2007.  On June 11, 2008, Jimenez's attorney forwarded to opposing counsel the Certification of Dr. Ronald M. Krinick, which was dated May 28, 2008.  The instant motions for summary judgment followed.

---

[3] The coracoacromial ligament is a heavy, arched fibrous band that passes above the shoulder joint.

[4] A medial meniscectomy is a type of orthopedic knee surgery which cuts meniscus from the knee joint.

[5] A chondroplasty repairs damaged cartilage with plastic.

## II.  DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

On a summary judgment motion, the moving party has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary. Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but rather to

determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  If there are no issues that require a trial, then judgment as a matter of law is appropriate.

**B. New Jersey's Automobile Insurance Cost Reduction Act's Verbal Threshold**

Brash's sole argument in support of his motion for summary judgment is that Jimenez failed to meet the verbal threshold set by N.J. Stat. Ann. § 39:6A-8(a) because she did not timely file a physician's certification and that without the certification there is no evidence to support her claim for damages.  As a result, Brash submits that Jimenez's claims for relief should be dismissed.

Section 39:6A-8(a) came into effect as part of New Jersey's Automobile Insurance Cost Reduction Act (AICRA), which was enacted "as a refinement to [New Jersey's] no-fault automobile insurance system."  Casinelli v. Manglapus, 181 N.J. 354, 360 (2004).  AICRA's purpose was to help "control the rising cost of automobile insurance and achieve lower insurance premiums."  Libby v. Conner, 2007 U.S. Dist. LEXIS 80507, at *9 (D.N.J. Oct. 31, 2007).  To achieve this goal, in-state motorists may opt to exchange lower insurance premiums for a limitation on their right to sue for non-economic damages in the event of an automobile accident.  See id.; see also N.J. Stat. Ann. § 39:6A-8(a).  This option is known as the "limitation on lawsuit" or as the "verbal threshold."  DiProspero v. Penn, 183 N.J. 477, 481 (2005).  Thus, the term verbal threshold refers to the limitation on tort recovery whereby an injured party may recover non-economic losses only if the bodily injury suffered exceeds a certain level.  Dyszel v. Marks, 6 F.3d 116, 119 n.1 (3d Cir. 1993).

The verbal threshold is "automatically applicable to non-residents whose insurers are authorized to transact business in New Jersey if their cars are used in New Jersey."  Dyszel, 6

F.3d at 119; N.J. Stat. Ann. § 17:28-1.4.  Hence § 39:6A-8(a) is often referred to as the "deemer statute" because non-resident drivers are deemed to have selected the verbal threshold option when their vehicles are used in New Jersey and their insurance carriers are authorized to do business in the state.  In this case, because Jimenez was a resident of the State of New York and her automobile insurance was issued by GEICO, which is a company authorized to transact business in New Jersey, when the accident occurred in New Jersey, the verbal threshold of § 39:6A-8(a) applies.

Under the verbal threshold of § 39:6A-8(a), an injured individual is prohibited from suing a defendant for non-economic damages unless the accident results in the individual's (1) death; (2) dismemberment; (3) significant disfigurement or scarring; (4) displaced fractures; (5) loss of a fetus; or (6) a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.  N.J. Stat. Ann. § 39:6A-8(a).  According to the statute, "[a]n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment."  Id.

An injured individual must file a certification from a treating physician establishing that the verbal threshold has been met.  The plaintiff has sixty days from the date that an answer to the complaint is filed to provide the defendant with a certification from a licensed treating physician stating that the plaintiff has sustained an injury from one of the listed categories.  N.J. Stat. Ann. § 39:6A-8(a).  The certification must be based on, and refer to, objective clinical evidence which establishes the existence of one of the listed injuries.  Id.  The court is permitted to grant one additional period, not to exceed sixty days, to file the requisite certification on a finding of good cause.  Id.

Here, Brash argues that the verbal threshold has not been met because Jimenez failed to comply with the requirement that a certification from a treating physician be filed within sixty days of the filing of the answer. Brash submits that without the certification, there is no evidence that Jimenez has suffered a permanent injury as a result of the April 30, 2006 automobile accident. Brash further submits that the narrative reports of Dr. Krinick and Dr. Gao, which were produced during discovery, are insufficient as certifications because they do not establish, within a reasonable degree of medical certainty, that Jimenez's injuries are permanent in nature or causally related to the automobile accident. Without any evidence of a permanent injury, Brash concludes that the verbal threshold has not been meet and therefore, that Jimenez's claims must be dismissed.

Failure to timely file a physician's certification, as required by § 39:6A-8(a), does not mandate dismissal of an AICRA cause of action. Casinelli v. Manglapus, 181 N.J. 354, 363 (2004). When addressing this precise issue of what should happen to a plaintiff's complaint when a physician's certification is belatedly filed, the Supreme Court of New Jersey held that the physician certification is not "a fundamental element of [an] AICRA cause of action" and therefore, "neither dismissal with nor without prejudice is compelled" when the certification is belatedly filed. Id. at 355-56. Rather, the Supreme Court of New Jersey viewed "the late filing of the physician certification as akin to a discovery violation," id. at 356, because the physician certification merely "support[s] the otherwise cognizable claims advanced in the complaint," id. at 365. Thus the "tardy presentation" of a physician's certificate falls under "the broad umbrella of failure to make discovery," and thereby subjects the plaintiff "to the arsenal of remedies provided in [the civil] rules for such procedural errors," but it does not mandate dismissal of the

plaintiff's complaint.  Id.

In this case, the physician certificate was not filed until June 11, 2008—approximately ten months after the answer to the amended complaint was filed.  Aside from the lateness of its filing, Brash has not objected to the sufficiency of Dr. Krinick's certification.  The certification, which is supported by medical reports, provides Dr. Krinisk's opinion that Jimenez's knee and shoulder injuries were caused by the April 30, 2006, automobile accident and that her injuries are permanent in nature.  Indeed, at oral argument, Brash's counsel conceded that, for the purposes of summary judgment, the certification showed that the verbal threshold had been met.  In addition, Jimenez has produced other evidence, including her medical records and doctors' reports, which, when taken together, create a question of fact on the issue of damages, and prevent a finding of summary judgment.

### III.  CONCLUSION

For the reasons set forth above, Brash's motion for summary judgment will be denied.  Consequently, Marnell's motion for summary judgment will also be denied.  The Court will enter an order implementing this opinion.


                                        */s/ Dickinson R. Debevoise*
                                        DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: September 10th, 2008